## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID R. KEEFER,              )
                                     )
           Plaintiff,        )
                                     )
      vs.                       )      2:05cv507
                                     )      Electronic Filing
JO ANNE B. BARNHART,      )
Commissioner of Social Security,      )
                                     )
           Defendant.    )

## MEMORANDUM JUDGMENT ORDER

AND NOW, this **29** day of September, 2006, upon due consideration of the parties' cross motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for disability insurance benefits under Title II of the Social Security Act ("Act") and Supplemental Security Income payments under Title XVI of the Act, IT IS ORDERED that the Commissioner's motion for summary judgment (Doc. No. 12) be, and the same hereby is, **denied** and plaintiff's motion for summary judgment (Doc. No. 10) be, and the same hereby is, **granted**. Accordingly, judgment will be entered in favor of plaintiff and against the Commissioner by separate order in accordance with Federal Rule of Civil Procedure 58 remanding the matter with direction to grant benefits consistent with an onset date of March 31, 2004.

The Commissioner's findings and conclusions leading to a determination that a claimant is not "disabled" must be supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971); Stunkard v. Secretary of Health and Human Services, 841 F.2d 57, 59 (3d Cir. 1988). The task of this court in reviewing the decision below is "to determine whether there is substantial evidence on the record to support the ALJ's decision." Burnett v. Commissioner of Social Security, 220 F.3d 112, 118 (3d Cir. 2000). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Morales v. Aphel, 225 F.3d 310, 316 (3d Cir. 2000)(quoting Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir.

1999)).

As the fact finder, the administrative law judge ("ALJ") has an obligation to weight all the facts and evidence of record and may accept or reject any evidence if the ALJ explains the reasons for doing so. Plummer, 186 F.3d at 429. This includes crediting or discounting a claimant's complaints of pain and/or subjective description of the limitations caused by his or her impairments. Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983); Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999). And where the findings of fact leading to the decision of the Commissioner are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2000). But where a review of the entire record reveals that the Commissioner's decision is not supported by substantial evidence, the court has an obligation to reverse the decision and remand with direction to grant benefits or conduct further proceedings. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984). A remand with direction to grant benefits is appropriate only when substantial evidence on the record as a whole indicates the claimant is disabled and entitled to benefits. Id. at 221-22.

Plaintiff seeks review of the ALJ's October 28, 2004, decision denying his application for benefits pursuant to a finding that although plaintiff's ability to engage in substantial gainful activity is restricted by limitations resulting from the severe impairments of bilateral hearing loss, osteoarthritis with deformity secondary to an injury of the left ankle, adhesive capsulitis of the right shoulder with decreased range of motion, right hip osteoarthritis, associated pain of the left ankle, right shoulder, and right hip, a depressive disorder, and a history of alcohol abuse/dependence, plaintiff retained the residual functional capacity to perform a range of medium work with no physical or postural limitations that would not be detailed and would be limited to simple instructions. R. 22-23; 214-15. A vocational expert indicated plaintiff could perform the positions of janitor/cleaner and laundry worker as normally performed in the national economy. The Appeals Council denied plaintiff's request for review and the instant action

2

followed.

Plaintiff was 60 years of age at the time the ALJ issued his decision. He had a limited education, having completed the seventh grade and never obtaining a GED. Plaintiff had a sporadic work history as junkyard laborer/mechanic, a wrecker/flatbed truck driver and an assistant/driver for an auto auction. R. 60-62, 68-73, 212-14. Plaintiff lives with his girlfriend in a trailer on a 10 and ½ acer plot of land.

Plaintiff alleged he became unable to work on a full time basis and thus disabled on January 2, 2002, due to hearing loss, and pain in the low back, left ankle, right hip, and right shoulder, associated with physical deformity and osteoarthritis, secondary to a motorcycle accident in 1970. In the accident plaintiff suffered a significant crush injury to the left foot and a displaced ankle, which required major bone surgery with the placement of pins. R. 180. After the accident plaintiff never received physical therapy or any other rehabilitative modalities. R. 180.

Plaintiff also suffers from long-standing depression and alcohol dependence with adjustment disorder. Plaintiff experiences periodic bouts of depression which at times have included suicidal ideation. R. 120. Plaintiff sought treatment in October of 2002, complaining of a depressed mood off and on and periodic crying spells. He was treated initially with Paxil and subsequently with Remeron. R. 155-161, 119-132. Plaintiff has been under the care of a psychiatrist and met regularly with a licensed social worker since October of 2002, and has responded positively to these forms of treatment.

Plaintiff's principal limitations are orthopaedic in nature. R. 133. Plaintiff was referred for a disability examination to David Evanko, M.D., and was examined on November 27, 2002. R. 133. Plaintiff presented with a left ankle impairment secondary to a crush injury in a motorcycle accident in 1970, repaired by bone surgery. Plaintiff indicated he could not stand for more than twenty minutes due to pain and swelling and has to rest or walk to relieve the pain. He also reported chronic right hip pain and right shoulder pain which had progressively worsened in

3

the proceeding months and limited his range of motion. R. 133. Dr. Evanko conducted a complete examination. It revealed significant hearing loss. R. 134. It also revealed significant problems in plaintiff's right shoulder. R. 135. It was frozen "related to long-term bursitis and tendinitis with forward flexion on the right limited to 20 degrees, abduction to 30 degrees, internal rotation to 20 degrees, and external rotation to 60 degrees." R. 135. Adduction was limited to 15 degrees. R. 135. The examination likewise revealed tenderness with range of motion of the right hip and tenderness of the right lumbar muscles. Mild osteoarthritis was present throughout plaintiff's joints but he was able to walk without problems, dress himself and perform basic postural movements. Dr. Evanko reported that plaintiff suffered from bilateral significant hearing loss, problems with nocturnal vision, osteoarthritis with deformity secondary to an injury of the left ankle, adhesive capsulitis of the right shoulder with decreased range of motion, right hip osteoarthritis and a major depressive disorder. R. 135. It was his prognosis that plaintiff's orthopaedic problems could improve with intense therapy and treatment, including possible surgery to the right shoulder, but without treatment, the symptoms would progress, resulting in with more limitations on activities and range of motion. A subsequent x-ray of plaintiff's right hip produced normal results. R. 137.

Plaintiff also sought treatment with David D. Demby, M.D., on March 31, 2004, for left leg and ankle pain as well as right shoulder pain with difficulty abducting and marked crepitus. R. 180. Physical examination revealed that plaintiff has a wide-based gait with slight limping on the left with regular walking. R. 181. Plaintiff was unable to walk fully on his toes and had a significant limp on the left when he attempted to do so. The same limitations were present when plaintiff attempted to heel walk. Plaintiff displayed good muscle strength except where he experienced pain on attempting to make a movement. R. 181. Back-flexion was limited to 70 degrees and produced pain in the lower back. Lateral motion was intact. R. 181. Examination of plaintiff's right shoulder revealed crepitus with abduction to 70 degrees, stopped by pain. R. 180-81. Dr. Demby reported plaintiff as suffering from chronic left leg pain secondary to a

4

motorcycle accident and fractures that had healed without the benefit of therapy and treatment, coupled with right shoulder pain with crepitus that had never been treated. R. 181. He prescribed Naprosyn for pain. R. 181.

Dr. Demby completed a physical capacity evaluation based on his physical examination. He listed plaintiff's medical diagnosis as including chronic left leg pain, chronic right shoulder pain, low back pain and depression. R. 169. Symptoms from these conditions included pain and fatigue in the mentioned areas with arthritic changes. R. 169. Dr. Demby rated plaintiff's limitations from the resulting pain and fatigue as follows: plaintiff would be able to stand for ten minutes per hour during an eight hour work day, walk five minutes during that time and sit without limitation for a full hour. R. 169. He further limited plaintiff's ability to stand to a total of two hours out of an eight hour work day, with no limitation in sitting or alternate sitting and standing at will. R. 169-170. Plaintiff was limited to a five to ten pound lifting restriction, no pushing or pulling with the upper extremities and no use of the feet for repetitive movements such as operating foot controls. R. 170. Plaintiff can engage in repetitive simple grasping and fine manipulation. R. 170. Postural limitations included no bending, climbing, stooping, balancing, crouching, kneeling, crawling, pushing or pulling. R. 170. Plaintiff can occasionally reach. R. 170. Plaintiff must avoid moving machinery but is otherwise unaffected by it. Dr. Demby indicated that medication would not alleviate the restrictions involving the use of the legs for any manipulation of machinery or for pushing or pulling. R. 171. Objective medical findings supporting these limitations were plaintiff's restricted range of motion in the right shoulder and abnormally wide gait with a limp in the left leg secondary to the crush injury to plaintiff's left lower extremity from the 1970 motorcycle accident. R. 171.

The record contained no other medical evidence pertaining to plaintiff's physical impairments and resulting limitations.

The ALJ concluded that plaintiff's claim of disability based on multiple impairments was not supported by "the medical evidence, his own contemporaneous statements to treating

5

sources, or medical source opinion." In addition, the ALJ discounted plaintiff's complaints of pain to the extent they suggested an inability to perform less than "at least a medium level" of work because plaintiff had performed all levels of exertion since his motorcycle accident in 1970 and as a result "this long-time injury could not possibly be the basis for permanent disability." In addition, the ALJ observed that plaintiff reported doing odd jobs around the house, mowing the lawn, running errands, and being able to lift 50 to 100 pounds. R. 19. With regard to the medical source opinions on plaintiff's exertional limitations, the ALJ disregarded Dr. Demby's limitations on the ground that plaintiff reported he was able to lift and carry 50 to 100 pounds, mow a four and one-half acre lawn, trim weeds, and complete home maintenance projects. In addition, plaintiff only sought treatment with Dr. Demby for the purpose of obtaining "total disability." Consequently, the ALJ concluded that Dr. Demby's opinion was not well supported by the total evidence of record and was not entitled to any weight.

The ALJ further observed that plaintiff indicated he had been working extensive hours prior to December of 2001, that he "had a severe alcohol problem until at least 2002", he was on no medication and had no family doctor in August of 2002, and lived with his girlfriend, who herself is on disability. R. 21. In addition, an x-ray of plaintiff's right hip was described as "normal" in January of 2003 and plaintiff indicated that he continued to do "odd jobs". Accordingly, the ALJ found plaintiff's credibility "high suspect" because plaintiff had not worked on a regular basis since January of 2002, did not wear his hearing aides and continued to perform heavy work during the years following his 1970 motorcycle accident.

Based on the above-referenced construction of the record, the ALJ concluded that plaintiff retained the residual functional capacity to lift and/or carry 50 to 100 pounds, had only mild hearing loss, and had mild to moderate functional limitations in the ability to concentrate, leading to the determination that plaintiff could "perform a significant amount of work at the medium level of exertion." R. 21.

Plaintiff was sixty years of age at the time the ALJ rendered his findings and conclusions.

6

He had a limited education and his previous semi-skilled work experience produced no

transferrable skills. Under the medical-vocational guidelines, an individual of at least advanced

age, a limited education, and semi-skilled previous work experience with no transferrable skills

that is only capable of performing sedentary work is disabled. The same is true of such an

individual who is only capable of performing light work. See Appendix 2 to Subpart T of Part

404 of 20 C.F.R. Rule 201.02 and 202.02. An individual of plaintiff's age, education and past

work experience is considered to be not disabled only where he or she is capable of performing at

least medium work. Id. at Rule 203.04.

The Commissioner's regulations define sedentary work as follows:

> Sedentary work involves lifting no more than 10 pounds at
> a time and occasionally lifting or carrying articles like docket files,
> ledgers, and small tools. Although a sedentary job is defined as
> one which involves sitting, a certain amount of walking and
> standing is often necessary in carrying out job duties. Jobs are
> sedentary if walking and standing are required occasionally and
> other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a
> time with frequent lifting or carrying of objects up to 10 pounds.
> Even though the weight lifted may be very little, a job is in this
> category when it required a good deal of walking or standing, or
> when it involves sitting most of the time with some pushing and
> and pulling of arm and leg control. To be capable of performing
> a full or wide range of light work, you must have the ability to do
> substantially all of these activities. If someone can do light work,
> we determine that he or she can do sedentary work, unless there
> are additional limiting factors such as loss of fine dexterity or
> inability to sit for long periods of time.

20 C.F.R. § 416.967(b). The Commissioner has further indicated in Social Security Ruling 83-

10 that light work generally requires the ability to stand and carry weight for approximately six

hours of an eight hour day.

The regulations define medium work as follows:

> Medium work involves lifting no more than 50 pounds

7

> at a time and frequently lifting or carrying of objects weighing
> up to 25 pounds.  If someone can do medium work, we determine
> that he or she can also do sedentary and light work.

20 C.F.R. § 416.967(c).  In other words, an individual capable of performing a wide range of medium work must be able to be on his or her feet during a substantial portion of the day, do a good deal of walking and standing throughout the day, engage in frequent lifting and carrying of objects weighing up to twenty-five pounds, and sitting with some pushing and pulling through the use of arm and leg controls.  To be able to perform a wide range of medium work, and individual must have the ability to do substantially all of these activities.

The key issue presented is whether, notwithstanding plaintiff's physical impairments, he is able to perform work with medium exertional demands.  These demands would include the ability to walk and stand a good deal of the day, and the use of pushing and pulling through arm or leg controls.  In addition, the individual must be able to lift 50 pounds at a time occasionally and frequently lift and carry objects weighing up to 25 pounds.

The record lacks substantial evidence to support the ALJ's findings and conclusions.  There is virtually no evidence to support the ALJ's findings and determinations that plaintiff retained the residual functional capacity to perform a significant range of work at the medium level of exertion.  The ALJ committed several errors in construing the record to support such a determination.

First, the medical evidence of record indicated plaintiff had standing, walking, carrying and postural maneuvering limitations well below those necessary to meet the work demands of the medium exertional level.  Plaintiff's age, lower extremity deformity, abnormal gait, shoulder capsulitis, and osteoarthritis provided more than adequate objective medical conditions and findings to support those findings. And the record contained no conflict in the medical evidence whatsoever.  Accordingly, the ALJ lacked an evidentiary basis from which to substantially discount the opinions and assessment of the consulting physicians who examined plaintiff.

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord

8

treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)); see also Allen v. Bowen, 881 F.2d 37, 41 (3d Cir. 1989); Podedworney v. Harris, 745 F.2d 210, 217-18 (3d Cir. 1984). And reports from consulting physicians who have examined the claimant and rendered assessments on conditions within their respective area of expertise are to be given appropriate evidentiary weight, which will vary based on the circumstance and the other medical evidence presented. Gordils v. Secretary of Health and Human Services, 921 F.3d 327, 328 (1st Cir. 1990) (citing Rodriguez v. Secretary of Health and Human Services, 647 F.2d 218, 223 (1st Cir. 1981) (weight to be afforded a consulting/examining physician's report "will vary with the circumstances, including the nature of the illness and the information provided the expert."). For example, where the consulting/examining physician's report constitutes the only probative medical evidence on the condition in question, it may be entitled to great or even controlling weight. See Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995) (examining physician's report accorded significant weight where it was only medical assessment on point and corroborated by other evidence). Similarly, examining physician's reports that rest on objective clinical test results may be entitled to significant or controlling weight. See Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ failed to give proper weight to the examining physicians' reports, including the report of its own consulting physician. Dr. Evanko examined plaintiff on November 27, 2002, pursuant to a request by the Pennsylvania Bureau of Disability Determination. Testing revealed that plaintiff had significant hearing loss as well as substantial limitation in the use of his right shoulder. Dr. Evanko reported that plaintiff could not stand for more than twenty minutes as a result of the pain and swelling that would occur in his left ankle and he would have to rest or walk for a few blocks after standing for that period of time. He also observed that plaintiff had osteoarthritis with deformity secondary to the injury of his left ankle as well as right hip

9

osteoarthritis. His prognosis indicated that plaintiff might be able to improve with intense therapy and treatment coupled with possible surgery to the right shoulder, but without such measures plaintiff's symptoms would progressively result in more limitations on activities and range of motion. In other words, they were impairments that could be excepted to deteriorate progressively and further impair plaintiff's physical abilities. And while Dr. Evanko did order an x-ray of plaintiff's right hip which was within normal limits, such testing did not undermine the symptoms and limitations associated with plaintiff's osteoarthritis and deformity of the left extremity nor plaintiff's limited use of his right shoulder.

Moreover, Dr. Demby's physical examination of March 31, 2004, and his physical capacity evaluation completed in conjunction therewith resulted in findings consistent with and substantially similar to those of Dr. Evanko. Plaintiff displayed an abnormally wide gait with limp of his left leg as well as substantially restricted range of motion in the right shoulder. The deformity and limp in the left lower extremity as well as the abnormal gait were medical conditions readily ascertainable through physical examination. Testing confirmed the limited range of motion in the shoulder. Dr. Demby concluded that these conditions limited plaintiff to no more than two hours of standing in an eight hour work day. In addition, plaintiff would be unable to engage in consistent pushing and pulling and virtually all forms of repetitive postural maneuvering. Dr. Demby also opined that plaintiff would be unable to use his left leg for any manipulation of machinery or pushing or pulling and his ability to lift was limited well below that necessary to meet the occasional and frequent demands at the medium level of exertion.

Second, the record contained virtually no evidence to support the ALJ's determination that plaintiff's activities of daily living were inconsistent with or suggested an ability to engage in full time substantial gainful activity at the medium level of exertion. To the contrary, plaintiff's reported activities were quite consistent with the physical functional capacity assessment rendered by the examining physicians and suggested an ability to engage in full time substantial gainful activity at the sedentary or light levels at best. Finally, the record did not contain

substantial evidence to support the ALJ's assessment of plaintiff's testimony pertaining to the limitations produced by his multiple physical impairments.

The ALJ discounted Dr. Demby's physical capacity assessment of plaintiff on the grounds that plaintiff indicated in his application forms that he was able to lift and carry 50 to 100 pounds, mow a four and a half acre lawn, "whack weeds" with a weed trimmer, and complete home maintenance projects. This assessment was based on a single answer to one of several dozen questions. Isolating plaintiff's responses in such a manner reflected a complete distortion of the information contained in plaintiff's application forms.

Plaintiff did indicated that he was able to "take care of ten acres of land plus two acres of lake by mowing four and a half acres and periodically cleaning the lake of debris." R. 86. He also indicated, however, that his ankle would give out after walking about 1,000 feet, would swell and turn color after standing on it for more than an hour and he would have to change positions due to hip and back pain after sitting for any significant period of time. R. 86. Mowing the four and a half acre lawn takes plaintiff two days on a riding mower and it takes two additional days for him to use a weed trimmer because of difficulty with his left ankle, right hip and right shoulder. Except for mowing on a riding lawnmower, plaintiff indicated he had to "take a lot of breaks" during the performance of all other lawn work because it required use of hand tools and walking. R. 87. He further indicated he had difficulty performing matters of personal care whenever he was required to raise his right arm higher than his chest. R. 87. In addition, he indicated he could no longer repair leaking pipes because he was unable to maneuver into tight places and it took him awhile to get back up once he got down in a lowered position. R. 87. And while plaintiff indicated he was able to carry one large bag or two small bags of groceries, he reported having constant ankle, hip and back pain from walking while grocery shopping. His attempts to engage in home maintenance were "slow but sure," were performed with pain, and he had to be "careful how I step, reach and lift or it will knock me down." R. 88. Plaintiff indicated he could work approximately one hour, but then needs to rest for twenty to

11

thirty minutes. These restrictions now preclude him from working on small cars due to postural maneuvering such as bending, kneeling or getting into small places with his body and hands. R. 88. Plaintiff can remain sitting for approximately one and a half to two hours, but then has to maneuver about due to pain. R. 88.

Plaintiff also indicated he could lift and carry 50 to 100 pounds. R. 88. His ability to do so, however, was limited to five to ten feet and he had to stop due to lower back pain, difficulty with his shoulder and left ankle pain. Plaintiff also indicated he could not raise his arms above his chest without neck and shoulder pain and "popping" in his shoulder joint. Plaintiff further indicated that he could no longer operate a boat motor due to pain and numbness after about ten minutes. R. 89. Nor could he swing a pick or axe due to shoulder pain. R. 89. Finally, plaintiff explained that he had endured pain for years but had recently been getting to the point where he was unable to work with it anymore. R. 92.

Plaintiff's testimony at the hearing was to the same effect. When the ALJ inquired about cutting grass, plaintiff explained that he could use a riding motor but had difficulty with the weed trimmer because he had to do a lot of walking and he couldn't stand on a hillside for more than a few minutes. R. 200. When asked about car repair and performing odd jobs, plaintiff explained that he tried to fix his own vehicle, but was unable to do it like he had in the past and was physically unable to do it for anyone else. R. 204. In addition, plaintiff explained that while he occasionally cut grass and trimmed with a weeder, he had difficulty doing so on any kind of slope. R. 206. And while he was able to perform these tasks at home and had done it at work in the past, he would be unable to cut other people's grass. R. 210.

Other than a single statement indicating in general that plaintiff was able to take care of ten acres of land, including mowing four and a half acres and periodically cleaning debris out of the lake, no aspect of plaintiff's application forms or his testimony at the hearing suggested that his activities of daily living were consistent with the ability to perform full time substantial gainful activity at the medium exertional level.

12

The record contained no other medical evidence or medical source opinions on plaintiff's physical impairments and the limitations they produce on plaintiff's physical capacity. The ALJ did reference the 2003 x-ray of plaintiff's right hip, which was within normal limits. Of course, this testing had no bearing on plaintiff's deformity of the left lower extremity, his abnormally wide gait, and his limp, all of which necessarily would place more stress on plaintiff's right hip during ambulation. And it is well settled that an x-ray within normal limits does not rule out the existence of osteoarthritis. See PROFESSIONAL GUIDE TO DISEASES, 7th ed. (2001) at 587 ("A thorough physical examination confirms typical symptoms [of osteoarthritis], and absence of systemic symptoms rules out an inflammatory joint disorder. X-rays of the affected joint help confirm diagnosis of osteoarthritis but may be normal in the early stages. ... No laboratory test is specific for osteoarthritis."). Nor does it eliminate the necessary declination in an individual's physical abilities when he or she reaches advanced age. See 20 C.F.R. § 404.1563(d) ("advanced age (55 or over) is the point where age significantly affects a person's ability to do substantial gainful activity."). It follows that this piece of seemingly inconsistent medical evidence could not possibly carry the weight the ALJ placed upon it.

The ALJ also drew inferences about plaintiff's physical abilities from his past record of employment and suggested that plaintiff's long-term performance of heavy work was inconsistent with his present complaints. In addition to the ALJ failing to recognize the effects of being 60 years of age, plaintiff's recounting of his work-history did provide substantial evidence to support this assessment. Plaintiff indicated that for the most part, his prior employment involved commercial driving and light work activity preparing automobiles for display at an area auction. He was only required to engage in more strenuous lifting and carrying on a very occasional basis, such as when batteries had to be changed in a car. He was seated approximately 90 percent of the time. R. 212. His more strenuous work in the scrap yard occurred sometime between 1979 and 1988, when he primarily drove a wrecker and a tilt bed and occasionally did some automotive repair work as well. R. 214. Thus, the ALJ's inference that

13

plaintiff continued to meet the demands of heavy labor throughout his working career was substantially undermined by the evidence of record. And plaintiff's ability to do physical activities consistent with sedentary or even light work on a sporadic or even a regular basis in the more recent years hardly provided a foundation to conclude that plaintiff could meet the physical demands of medium work on a constant basis.

Because there virtually was no evidence to the contrary, the ALJ was not free to ignore the entire body of consistent medical opinions and assessments by the consulting and examining physicians and draw adverse inferences having no substantial support. Morales, 225 F.3d at 318 (Of course, as a general matter an "ALJ cannot, as he did here, disregard [the import of the medical evidence] based on his own amorphous impressions, gleaned from the record, and from his evaluations of the claimant's credibility.") (quoting Kent v. Schweiker, 710 F.2d 110, 115 (3d Cir. 1982)). The ALJ likewise was not free to rely on a few isolated and selective excepts from plaintiff's application forms to inform his assessment of plaintiff's residual functional capacity. See Kent, 710 F.2d at 114 (A single piece of evidence is not substantial if the Commissioner fails to resolve conflicts created by evidence, or if it is not evidence but mere conclusion.); Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981) ("Substantial evidence can be considered as supporting evidence only in relationship to all the other evidence in the record.").

The record also fails to contain substantial evidence to support the ALJ's assessment of plaintiff's credibility. The Act recognizes that under certain circumstances pain in itself may be disabling:

> [a]n individual's statement as to pain or other symptoms shall alone not be conclusive evidence of disability ...; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that result from anatomical, physiological or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the

14

> intensity and persistence of such pain or other symptoms
> which may reasonably be accepted as consistent with
> the medical signs and findings), would lead to a
> conclusion that the individual is under disability.

42 U.S.C. § 423 (d)(5)(A); Green v. Schweiker, 749 F.2d 1066 (3d Cir. 1984). The United

States Court of Appeals for the Third Circuit has set forth a four-prong standard to be used by

district courts when reviewing assessments of the Commissioner subjective pain: (1) subjective

complaints of pain are to be seriously considered, even where not fully confirmed by objective

medical evidence; (2) subjective pain may support a claim for disability benefits and may be

disabling; (3) when such complaints are supported by medical evidence, they should be given

great weight; and finally, (4) where the claimant's testimony as to pain is reasonably supported

by medical evidence, the ALJ may not discount the pain without contrary medical evidence.

Ferguson v. Schweiker, 765 F.2d 31 (3d Cir. 1985).

The record is replete with references to the serious crush injury plaintiff sustained to the

left ankle and foot in the 1970 motorcycle accident. R. 77, 81, 120, 128, 133, 157, 180, and 203.

The record similarly indicates plaintiff consistently reported experiencing pain in his left ankle

and right hip after walking or standing for any period of time or engaging in postural

maneuvering. And the ALJ's effort to discount plaintiff's reports of pain and limitation from

such activity based on the fact that plaintiff in years past had worked in excess of 40 hours a

week, did not regularly seek medical treatment, did not use pain medication for intense pain and

was able to engage in lawn care work at home, failed to provide any basis to conclude that

plaintiff would be able to meet the demands of work at the medium exertional level. The

question was not whether plaintiff could meet the demands of substantial gainful activity at a

modified range of light work or full range of sedentary work. Such a determination would be

much more consistent with the medical evidence and plaintiff's indications of his physical

abilities. Instead, it was whether plaintiff could meet the demands of work at the medium

exertional level on a constant basis. Nothing in the record suggested that he could.

Plaintiff's reports and accounts concerning his pain and the limitations caused by his multiple physical impairments were consistent and corroborated throughout the record. No consulting or examining physician ever suggested or implied that his complaints were without a correlating medical condition that could be expected to cause such pain and limitations. In fact, plaintiff's subjective complaints were quit consistent with an individual 60 years of age who suffered a crush injury to the left lower extremity, had a wide gait, walked with a limp, and had capsulitis in the right shoulder from years of long-term bursitis and tendinitis.

Because there were medical bases for plaintiff's complaints of pain and reported limitations and the examining physicians did not doubt the existence of these symptoms, the ALJ erred in failing to accord proper weight to this aspect of the record. See Stewart v. Sullivan, 881 F.2d 740 (9th Cir. 1989) (it is error to reject consistent evidence of excess pain on the ground that is not supported by objective medical findings where there is medical evidence to support the existence of some pain); Ferguson v. Schweiker, 765 F.2d 31 (3d Cir. 1985) (where claimant's testimony as to pain reasonably is supported by medical evidence, the ALJ may not discount the pain without contrary medical evidence; and where the complaints are supported by medical evidence, they are to be given great weight). Plaintiff's complaints that he could not stand for more than short periods of time due to pain and swelling of the ankle, walk for hours throughout the day, lift his right arm above his chest, or frequently carry any appreciable weight were supported by the substantial evidence of record and each limitation was sufficient to remove plaintiff from a significant range of work at the medium level of exertion.

Finally, there literally was no evidence which suggested plaintiff engaged in any activities of daily living or social functioning that were inconsistent with the pain and limitations he described. The record consistently reflected plaintiff's inability to engage in the activities of daily living beyond what would be considered to be consistent with the demands of sedentary or at best a modified range of light work. Because there virtually was no evidence to the contrary, the ALJ was not free to ignore the entire body of consistent evidence and draw adverse

16

inferences having no substantial support. See Walton v. Halter, 243 F.3d 703, 709-10 (3ᵈ Cir. 2001) (ALJ may not ignore evidence and draw adverse inference having no substantial support in the record); Burnett, 220 F.3d at 122 ("an ALJ may not make speculative conclusions without any supporting evidence").

The Act describes disability as the inability to engage in substantial gainful activity by reason of a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. The ability to engage in substantial gainful employment means more than the ability to do certain of the physical and mental acts required on the job; the claimant must be able to sustain the physical and mental demands of work-related activities throughout continuous attendance in a regular work week. Dobrowolsky v. Califano, 606 F.2d 403, 408 (3ʳᵈ Cir. 1979). The question thus is not whether a claimant can perform activities consistent with substantial gainful activity on any particular day, but whether the claimant has the ability to engage in work activities on a systematic and sustained basis. Plaintiff had the burden of making out a prima facia case that she was disabled within in the meaning of the Act. Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980); Livingston v. Califano, 614 F.2d 342, 345 (3d Cir. 1980); 20 C.F.R. § 404.1512(a). This burden generally is met where the record clearly substantiates a claimant's subjective claim that he or she has an impairment which prevents the claimant from engaging in substantial gainful activity. Rossi v. Califano, 602 F.2d 55 (3d Cir. 1979). The substantial evidence of record supports only the conclusion that plaintiff could not engage in such activity as of March 31, 2004, when Dr. Demby recognized that plaintiff was limited in the ability to walk, stand and engage in postural maneuvering to a substantial degree below that required for work at the medium exertional level. The medical and other evidence of record further supported only the view that the symptoms produced by plaintiff's multiple impairments rendered plaintiff disabled from all forms of substantial work activity above sedentary and a limited range of light work. Accordingly, to the extent the ALJ's findings and conclusions reflected a determination that plaintiff was not disabled on and after that date they were not supported by substantial

17

evidence.   As a result plaintiff's motion for summary judgment must be granted and the matter will be remanded to the Commissioner with direction to grant benefits consistent with an onset date of March 31, 2004.

_____
David Stewart Cercone
United States District Judge

cc:      Honorable Lisa Pupo Lenihan
         United States Magistrate Judge

         Christine M. Nebel, Esquire
         220 South Washington Street
         Butler, PA 16001

         Paul Skirtich, AUSA

18